J-S13004-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KHALIF ABDULRA SINCLAIR | : | |
| Appellant | : | No. 1805 EDA 2025 |

Appeal from the PCRA Order Entered June 10, 2025
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001690-2021

BEFORE: PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 1, 2026**

Khalif Abdulra Sinclair appeals from the order entered in the Court of Common Pleas of Montgomery County denying his first Post Conviction Relief Act ("PCRA")[1] petition following an evidentiary hearing. On appeal, Sinclair raises various claims of ineffective assistance of counsel. After careful consideration, we affirm.

We glean the following from the certified record. Sinclair was charged with various offenses relating to his role in the November 20, 2020 shooting that resulted in the death of Abdur Small. Sinclair retained Attorney Charles Peruto, Jr. to represent him at his preliminary hearing. The court subsequently appointed Attorney Wana Saadzoi to represent Sinclair at his formal

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

arraignment in April of 2021. Attorney Saadzoi's representation continued until August of 2021, when Sinclair again retained Attorney Peruto to represent him at a two-day jury trial.

On March 30, 2022, Sinclair was convicted of first-degree murder by transferred intent, persons not to possess firearms, possession of an instrument of crime ("PIC"), and recklessly endangering another person ("REAP").[2] On that same date, the court imposed a mandatory sentence of life imprisonment on the count of first-degree murder and concurrent sentences of one to two years each on the remaining counts. Sinclair filed a post-sentence motion, which the trial court denied on April 7, 2022. On March 21, 2023, a panel of this Court affirmed Sinclair's judgment of sentence. *See Commonwealth v. Sinclair*, 296 A.3d 629, 2023 WL 2583850 at *1 (Pa. Super. filed March 21, 2023) (unpublished memorandum). Sinclair subsequently filed a petition for allowance of appeal, which our Supreme Court denied on August 1, 2023. *See Commonwealth v. Sinclair*, 302 A.3d 1192 (Pa. 2023) (*per curiam* order).

On May 28, 2024, Sinclair timely filed a *pro se* PCRA petition, in which he raised claims of, *inter alia*, ineffective assistance of trial counsel. The PCRA court subsequently appointed PCRA counsel, who filed an amended PCRA petition. Appointed counsel also filed, on October 18, 2024, an alternative

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 6105(a), 907(a), and 2705, respectively.

petition for *habeas corpus* relief, pursuant to 42 Pa.C.S.A. § 9543. In his amended PCRA petition, Sinclair specifically alleged that trial counsel was ineffective for: (1) failing to inform him that he faced a mandatory sentence of life imprisonment if convicted of first-degree murder; (2) failing to advise him of a plea offer; (3) calling character witnesses to testify on his behalf at trial; and (4) failing to object to the Commonwealth's cross-examination of his character witnesses at trial. The PCRA court held a bifurcated evidentiary hearing on Sinclair's petition on February 3, 2025 and June 6, 2025. The PCRA court accurately summarized the evidence presented at the hearing as follows:

> First[, Sinclair presented the testimony of his mother,] Michelle Sinclair[.] Ms. Sinclair retained [counsel] on [Sinclair's] behalf, to represent him at his March 18, 2021, preliminary hearing. Following the preliminary hearing at which [Sinclair] was held for court on all charges, she met with [counsel] at his office. Also present [were] Kendell Sinclair, [Sinclair's] brother, and Kim Hall, [Sinclair's] sister. ... At this meeting, Ms. Sinclair was focused on asking [counsel] what was the worst-case-scenario for her son. She recalled that [counsel] stated, "10 to 20" years. [N.T. PCRA Hearing, 2/3/25, at 9.] Ms. Sinclair denied that [counsel] informed her that [Sinclair] was facing a mandatory life sentence without parole. She [stated that she] was shocked to learn this information for the first time during trial. ... Ms. Sinclair knew that for a time after the preliminary hearing, [Sinclair] was represented by a different attorney[] until she could pay the retainer fee for [trial counsel]. ... Ms. Sinclair testified that she was aware that [trial counsel] was negotiating with the Commonwealth to obtain a sentence of less than life imprisonment. She [indicated that she learned of] this information [through Sinclair], who [mentioned] an offer of 8 to 16 years.
>
> Kendell Sinclair also recalled in that meeting with [trial counsel] that the main concern was the worst-case scenario for [his brother]. Mr. Sinclair remembered that [counsel] told them 10 to

20 years. He also denied that [counsel] advised them that [Sinclair] was facing a mandatory life sentence.

Kim Hall also testified that Ms. Sinclair asked [trial counsel] the worst-case-scenario and he told them 10 to 20 years, and that he never mentioned ... that a mandatory life sentence was a possibility.

[Sinclair] testified on his own behalf. He stated that he was arrested in January of 2021 and that he was held at Montgomery County Correctional Facility through the time of trial in March of 2022. [Sinclair] stated that [trial counsel] only came to prison once to meet with him, and [] that was prior to the preliminary hearing. Directly after the preliminary hearing, [Sinclair] recalled that for about four months[,] he was represented by Attorney [] Saadzoi, until his family could provide [trial counsel] the retainer fee.

[Sinclair] testified that even after [trial counsel] entered his appearance in August 2021, he did not come to the prison to meet with him. The next time he saw [counsel in person] was on the first day of trial, March 28, 2022. Rather than [] in person visit[s], [Sinclair] stated that [counsel] communicated by letter, and that [counsel] would not take his calls to the office. [Sinclair] denied knowing that he faced a mandatory life sentence prior to trial. He did not recall that [counsel] had advised him of that.

[Sinclair] entered into evidence a letter from [trial counsel] dated November 12, 2021. ... The letter in part reads[:] "The Commonwealth will agree to allow you to plead guilty to the crime of murder of the third degree and a sentence of 12 to 24 years in the state correctional institution." [Exhibit P-1. Sinclair] testified that he understood [this passage] to mean that he could plead guilty to third[-]degree murder and [receive] a sentence of 12 to 24 [years].

[The letter further read:] "If the jury believes you shot into the house to scare them and that is why they can't find any strike marks from projectiles inside the home, the worst that can happen to you is third-degree murder. You can also get a verdict of not guilty or involuntary manslaughter." [**Id.** Sinclair testified that this passage indicated] that possible outcomes of the case[,] if he went to trial[,] could be not guilty, guilty of involuntary manslaughter, or guilty of third-degree murder. [In the letter,

- 4 -

counsel] did not mention that [Sinclair] could be found guilty of first-degree murder, or that he was facing a mandatory life sentence if convicted of first-degree murder.

* * *

[Sinclair] testified that[,] on the day of jury selection[,] he had a conversation with [counsel] about an offer. [Sinclair] remembered the offer to be 8 to 16 years, and [he] advised [counsel] that he wanted to accept that offer. [Sinclair] recalled that [counsel advised] him not to [accept] it because he could win the case. [Sinclair] followed this advice. ... According to [Sinclair], the first time he [learned] he could be convicted of first-degree murder [and was facing a life sentence] was during deliberations[.]

On cross-examination by the Commonwealth, [Sinclair] stated he was aware that he received an offer of 12 to 24 [years] for third-degree murder, but stated he [did not] reject it, [and instead,] it was [trial counsel] who rejected it. [Sinclair] insisted that he never had a conversation with [counsel] about it. The last [Sinclair] heard about an offer was an 8 to 16 year offer on the day of trial. [Sinclair] denied any conversations before trial of [a 10-to-20-year offer] and insisted that he never knew about it until his PCRA [proceedings].

[Sinclair] admitted that[,] after the preliminary hearing[,] he was held on all charges, includ[ing] first-degree degree murder, but he [did not] think he would be convicted of that. After the preliminary hearing, [Sinclair] knew that Attorney Saadzoi represented him for about four months[, but he] only remembered meeting her and not the substance of [their] meeting. He remembered a Zoom meeting with her but denied that she [informed him of his charges and the potential penalties]. His mindset was that [trial counsel] was his [primary] lawyer, and Attorney Saadzoi was filling in until they could get the retainer for [trial counsel]. ... Attorney Saadzoi provided [Sinclair] with discovery, and in that discovery was paperwork reflecting he was charged with first-degree murder. Upon further questioning, [Sinclair] admitted that Attorney Saadzoi probably did tell him he could be convicted of first-degree murder, but he [was not] paying attention [because] she was [temporary and] not his primary lawyer[.]

* * *

The Commonwealth first presented [the testimony of Assistant District Attorney ("ADA")] Samantha Cauffman, who had been the lead prosecutor. ADA Cauffman stated that she regularly had conversations with [trial counsel via phone call and email, that] he was responsive, [and that they had] conversations about a possible deal. First[,] ADA Cauffman conveyed a 12-to-24-year deal in return [for] a plea [to] third-degree murder. [Counsel] attempted to [negotiate a minimum] of 8 years, but ultimately it was decided that the lowest the Commonwealth could offer was 10 to 20 years. ... As to the initial offer of 12 to 24 years, [counsel] indicated to ADA Cauffman that [Sinclair] rejected the offer. Later, [when] the [10-to-20-year offer] was submitted to [counsel], [ADA Cauffman] set a deadline for that offer. [Counsel] finally responded that they would be going to trial, and that the offer was rejected. [Counsel indicated that he was rejecting the offer via email to protect himself.] ADA Cauffman extended the deadline on the [10-to-20-year] offer until January 14, 2022[. Counsel] responded in an email, [that Sinclair had rejected the] offer in writing.

ADA Cauffman acknowledged that this was a very difficult case, and after [presenting] the first few witnesses at trial[,] she renewed the [offer of] 10 to 20 year[s]. More specifically, [ADA Cauffman testified that she] leaned over to the defense table while [counsel] and [Sinclair] were seated there[. She] recalled that [Sinclair] was looking right at her [when she renewed the offer of 10 to 20 years]. ADA Cauffman spoke in a loud voice for both [counsel and Sinclair] to hear her. [Counsel] turned to [Sinclair] and had a conversation[, and counsel] counter-offered with [] 5 to 10 year[s.] ... ADA Cauffman [relayed] this counteroffer to the First ADA, [who informed her that she could not accept it,] and that 10 to 20 [years] was the lowest she could go[.] When she returned to the courtroom, [Sinclair] was no longer there, but she [informed counsel] that 10 to 20 was the lowest [offer].

At this juncture in the PCRA hearing, the Commonwealth played the audio [recording] of a prison phone call [between Sinclair and his girlfriend] from January of 2021. [Sinclair] was upset with his girlfriend [for helping] police locate him after [the] murder[,] and he [alluded to a life sentence.] This call [transpired] soon after [Sinclair's arrest] and [] preliminary arraignment, where he was advised of the charges, including first-degree murder.

[When counsel was called to testify, he stated] that he had [virtual] meetings with [Sinclair] more than once, [and that they exchanged] written correspondence[] and a few calls. He recalled that before [Sinclair's] preliminary hearing [they] had a conversation about the Commonwealth's legal theory [of] transferred intent. [Counsel] explained [transferred intent to Sinclair and informed him] that he could be convicted under [this theory]. ... [Counsel testified that he knew] this was a challenging case for the Commonwealth, and despite the Commonwealth's best offer of 10 [years], he was [negotiating] for [a minimum of] 8 years.

[Counsel] denied that in a case like this he would tell the family that [the] worst-case-scenario was 10 to 20 years. Rather[,] he would [inform them that the jury] could [convict on the charge of] first-degree murder. He [did not specifically recall whether] he said [this] at the meeting with [Sinclair's] family, but he remembered that he was trying to [convince Sinclair] to seriously consider the [Commonwealth's offer of 10 to 20 years. However, Sinclair] was fixated on [a sentence of] 8 to 16 [years. Counsel] recalled telling [Sinclair] that he was not going to get that and questioned him [as to] whether he was going to reject [the] offer for [two] years[. Counsel advised Sinclair that by doing so,] he was taking a gamble. [Counsel] recalled specifically telling [Sinclair there was] a possibility [of serving a life sentence if convicted of first-degree murder].

[Counsel] acknowledged [that his November 12, 2021 letter to Sinclair] was unartfully written. [Counsel reiterated] that when [Sinclair] rejected the plea offer, he told him that he was gambling and that he could get a life sentence. [Sinclair] knew that [counsel] was negotiating offers because [counsel] brought those offers to [Sinclair] and he rejected them. [Sinclair] was very upset with the [Commonwealth's initial offer], and [counsel advised] him that he believed he could get a better deal than 12 to 24 [years. Counsel advised Sinclair that he could reject the offer and attempt to negotiate a more favorable offer. Counsel pointed out that he did negotiate a more favorable offer, but Sinclair] was not realistic in his expectations.

[Counsel] expressed that he never [believed] his case would go to trial and thought [the Commonwealth's] offer would have been a lot better than 10 to 20 years. ... [Counsel remembered the conversation at the defense counsel table when the

Commonwealth] renewed [its offer of] 10 to 20 [years. Sinclair] asked [counsel] what [he would] do, and [counsel] told [Sinclair] that [it was his decision and that he could] lose big or win big[. However, counsel emphasized that the Commonwealth's offer of 10 to 20 years was] a guaranteed sentence. [Counsel] recalled that ADA Cauffman spoke loudly, and he believed that was intentional so that [Sinclair] would hear the offer. In [their] discussions[, Sinclair] was fixated on 8 to 16 [years. Counsel] rejected [the 10-to-20-year] offer while [Sinclair] was present.

PCRA Court Opinion, 9/18/25, at 2-9 (record citations omitted).

Finally, the Commonwealth called Attorney Saadzoi to testify, and she indicated that she had multiple meetings with Sinclair over the course of her representation. Attorney Saadzoi testified that to prepare for Sinclair's formal arraignment, she arranged a Zoom meeting and provided him with the documentation she had access to and wanted to discuss, which included a copy of the criminal complaint that listed the charge of first-degree murder. She indicated that prior to representing a new client at a formal arraignment, she reviews "the elements of the charges and the maximum penalties" with the client, as she did with Sinclair. *See* N.T. PCRA Hearing, 6/6/25, at 8. Attorney Saadzoi further indicated that she informed Sinclair the maximum penalty on the charge of first-degree murder was life imprisonment.

On June 10, 2025, the PCRA court entered a final order denying Sinclair relief on his ineffectiveness claims. On July 9, 2025, Sinclair filed a notice of appeal. Both Sinclair and the trial court have complied with Rule 1925. *See* Pa.R.A.P. 1925(a), (b).

On appeal, Sinclair presents the following questions for our review:

1.     Was trial counsel ineffective for failing to advise [Sinclair] that he was facing mandatory life in prison without parole if convicted of [first-degree murder] and therefore ineffective for failing to advise him to plead guilty to a term of years?

2.     Was trial counsel ineffective for introducing evidence of [Sinclair's] good character thereby permitting the Commonwealth to introduce evidence of [Sinclair's] prior conviction for disorderly conduct?

3.     Was trial counsel ineffective for failing to object to the Commonwealth's cross-examination of [Sinclair's] character witnesses in which the prosecution asked each character witness if they saw the evidence set forth in their case-in-chief and asked them if [Sinclair] was acting in a peaceful and law-abiding manner?

Appellant's Brief, at 3 (formatting altered; unnecessary capitalization and PCRA court answers omitted).

Our standard of review is well-settled:

When reviewing the dismissal of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level.

*Commonwealth v. Shields*, 347 A.3d 734, 744 (Pa. Super. 2025) (quotation marks, brackets, and citations omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Hollabaugh*, 346 A.3d 794, 798 (Pa. Super. 2025) (quotation marks and citation omitted). "This Court may affirm a PCRA court's order on any legal basis." *Commonwealth v. Pridgen*, 305 A.3d 97, 101 (Pa. Super. 2023) (brackets and citation omitted).

In each issue, Sinclair challenges the stewardship of his trial counsel. "With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." ***Commonwealth v. Beatty***, 335 A.3d 1236, 1241 (Pa. Super. 2025) (citation omitted).

> To establish a claim of ineffective assistance of counsel, a [petitioner] must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Nealy***, 333 A.3d 393, 399 (Pa. Super. 2025) (brackets and citation omitted). A petitioner's failure to satisfy his burden of proof with respect to any prong of the ineffectiveness test is fatal to his claim. ***See Beatty***, 335 A.3d at 1240. Furthermore, "[w]e need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." ***Commonwealth v. Hunter***, --- A.3d ---, 2026 WL 744253 at *15 (Pa. Super. 2026) (citation omitted).

To satisfy the arguable merit prong, a petitioner must show that "the factual averments, if accurate, could establish cause for relief. Whether the

facts rise to the level of arguable merit is a legal determination."

***Commonwealth v. King***, 259 A.3d 511, 521 (Pa. Super. 2021) (citation

omitted). Regarding the reasonable basis prong,

> we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. Our review of counsel's performance must be highly deferential.

***Beatty***, 335 A.3d at 1240 (quotation marks and citation omitted). For

purposes of satisfying the prejudice prong, "[a] reasonable probability is a

probability that is sufficient to undermine confidence in the outcome of the

proceeding." ***Commonwealth v. Knight***, 348 A.3d 1155, 1166 (Pa. Super.

2025) (citation omitted).

In his first issue, Sinclair avers that counsel was ineffective for failing to

inform him that, if convicted of first-degree murder, he was facing a

mandatory sentence of life imprisonment. ***See*** Appellant's Brief, at 21. Sinclair

maintains that, because he was unaware of the mandatory life sentence he

was facing, he was "unable to intelligently discuss" any potential plea offers

with counsel. ***Id.***

Sinclair's first ineffectiveness claim lacks arguable merit, as his

contentions are belied by the record. The PCRA court thoroughly addressed

Sinclair's claim as follows:

The testimony [presented] at the [evidentiary] hearing established that [Sinclair] was advised by [counsel] that he was charged with first-degree murder and that if convicted he would [receive] a mandatory life sentence without the possibility of parole.

[Counsel testified] that he told [Sinclair] there was a possibility that he would be convicted of first-degree murder, and if so[,] he would serve a life sentence. [Counsel] stated that he tried to get [Sinclair] to seriously consider the [10-to-20 year] offer, but that [Sinclair] was fixated on 8 to 16 years. ... [Counsel advised Sinclair that he] was taking a gamble by rejecting that offer [and informed] him that he could get a life sentence. ... [The PCRA] court found [counsel's] testimony credible.

Attorney Saadzoi also testified that[,] during her four-month representation of [Sinclair,] she had four meetings with him, [and that] it was her standard practice [to begin every meeting by framing] the importance of that conversation. [She further indicated that in meeting with a defendant in Sinclair's position, she] would say something to the effect of[: "You're charged with first-degree murder. The penalties are extreme here; it's life, so this is a very important topic that we're talking about." N.T. PCRA Hearing, 6/6/25, at 14.]

Further, at the hearing, the Commonwealth introduced a prison [phone call Sinclair made to his girlfriend in January of 2021,] shortly after he was arrested, that confirmed [he] knew he was facing a life sentence in prison. ... This [conversation transpired over a year] before his trial in March of 2022.

[The PCRA] court did not credit [Sinclair's] testimony that it [was not] until he was convicted that he understood he was facing a life sentence, and that he had no knowledge of this prior to trial. ... Additionally, [Sinclair] testified that he disregarded Attorney Saadzoi's representation [that she had informed him he was facing a life sentence] because he did not consider her his lawyer. [Sinclair indicated that he] had no recollection of any of their conversations[] yet also denied that she ever informed him of the charges and the penalties. However, [Sinclair ultimately] conceded that [Attorney Saadzoi] probably did advise him [that] he could be convicted of first-degree murder, but he did not pay attention.

> [Counsel] acknowledged that [his] letter [to Sinclair explaining potential outcomes] was unartfully written, but the letter itself [was] premised on the theory that [Sinclair could be convicted of third-degree murder] "if the jury believe[d] that [he] shot into the house to scare them." [Exhibit P-1.] The testimony [presented] at the hearing established that [Sinclair] was [independently] informed [by both counsel and Attorney Saadzoi] that he could be convicted of first-degree murder and that it carried a mandatory life-sentence. ... This letter cannot be examined in a vacuum, without the larger context and entirety of [Sinclair's] representation.

PCRA Court Opinion, 9/18/25, at 16-18 (headings, record citations, unnecessary capitalization, and brackets omitted).

Viewing the PCRA court's findings and the evidence of record in the light most favorable to the Commonwealth, we discern no error in the PCRA court's rejection of Sinclair's first ineffectiveness claim. **See Shields**, 347 A.3d at 744. The evidence presented at Sinclair's PCRA hearing clearly established that, both prior to and at trial, Sinclair was aware he was facing a charge of first-degree murder and a mandatory sentence of life imprisonment. The PCRA court's factual findings and credibility determinations are adequately supported by the record, and therefore Sinclair's claim fails for lack of arguable merit. Accordingly, Sinclair's first issue does not warrant relief.

In his second issue, Sinclair avers that trial counsel was ineffective for introducing evidence of his good character at trial where counsel was aware that Sinclair had a prior disorderly conduct conviction and that the Commonwealth would introduce evidence of this prior conviction during cross-examination of his character witnesses. **See** Appellant's Brief, at 21.

Sinclair's second ineffectiveness claim is undeveloped. In the limited argument he presents to support this claim, Sinclair fails to discuss each prong of the ineffectiveness test or cite to any legal authority to support his position. *See id.* at 26-27. "When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." *Commonwealth v. Hamilton*, 303 A.3d 823, 831 (Pa. Super. 2023) (citation omitted); *see* Pa.R.A.P. 2119(a) (requiring the argument presented in an appellant's brief to include discussion of and citation to pertinent authorities). "It is not the obligation of an appellate court to formulate an appellant's arguments for him." *Commonwealth v. Reich*, 340 A.3d 997, 1011 n.8 (Pa. Super. 2025) (citation omitted). Therefore, Sinclair waived his second ineffectiveness claim by failing to adequately develop it in his brief. Accordingly, Sinclair's second issue is waived for lack of development and does not warrant relief.

Even if Sinclair did not waive this issue, it would not merit relief, as the record supports the PCRA court's finding that trial counsel had a reasonable basis for his strategy of introducing evidence of Sinclair's good character. *See* PCRA Court Opinion, 9/18/25, at 19-21. The PCRA court first reviewed the testimony of trial counsel:

> At the PCRA hearing, PCRA counsel questioned [trial counsel] as to why he called reputation witnesses when [Sinclair] had a [prior] disorderly conduct conviction. He noted that [trial counsel] actually told the jury in his opening statement that they were

going to hear that [Sinclair] had a disorderly conduct conviction. On direct examination, [trial counsel] explained that [] raising this and permitting the Commonwealth to cross-examine the [witnesses] on this was a strategy to be able to argue to the jury in closing that[:] "If that's all he's got, then he's got good character." [N.T. PCRA Hearing, 2/3/25, at 137.] This was a part of a bigger argument that [Sinclair's] life was an open book to the jury, and that all he has is a disorderly conduct conviction. On cross-examination [counsel] reiterated that the disorderly conduct conviction wasn't that bad.

In fact, [trial counsel's] closing argument set forth the following for the jury to consider[:]

I purposely put character witnesses on. I knew what the evidence was that they could be cross-examined with. What's his reputation for being a peaceful and a law-abiding citizen? It is excellent. It is very good.

And [ADA Cauffman] asked very good questions. She is very good: Did you see the evidence in this case? Did you see that he is throwing a stick up at the door? Did you see that he went and shot into the house? Did you see that he went and shot in the house? Yeah. Is that peaceful? No. But outside this case he has led a law-abiding life, except for one disorderly conduct [conviction]. And, honestly, growing up where he grew up, he should get a gold star for only having a disorderly conduct at that place in Norristown.

We brought it in because character evidence is of legal significance[.] I want you to know we're not talking about a guy who robbed banks, ran a scam for ID theft or whatever the crime may be. I wanted you to know his record so we can air it out.

*Veredicti*, *veredicto*, to speak the truth. I wanted you to know that.

The Judge will tell you—and this is why it is very important: If a defendant presents character evidence, that in and of itself, if believed outside the facts of this case, can give rise to a reasonable doubt.

[N.T. Trial, 3/30/22, at 28-29.]

PCRA Court Opinion, 9/18/25, at 20-21 (unnecessary capitalization and record citations omitted).

The PCRA court then correctly analyzed counsel's explanation, using the correct standard of review, as follows:

> With this standard in mind, [the PCRA] court determined that [trial counsel] had a reasonable basis in believing that the evidence supporting [Sinclair's] good character outweighed [his] prior conviction of disorderly conduct, and the Commonwealth's [use of] this conviction in cross-examination. [Counsel] believed [] the crime that [Sinclair] was on trial for was far more serious and made the disorderly conduct conviction relatively unimportant in comparison. This gave [counsel] the opportunity to argue that [Sinclair's] life is an open book, and his only prior conviction was disorderly conduct; this is not someone who commits murder. [Counsel] believed the strength of the good character evidence outweighed [Sinclair's] prior conviction. This reference to the strength of [Sinclair's] good character evidence is significant. "Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." ***Commonwealth v. Buterbaugh***, [91 A.3d 1247, 1264 (Pa. Super. 2014) (citation omitted)]. "Evidence relating to a defendant's good character is so important that failure to present available character witnesses may constitute ineffective assistance of counsel if there is no reasonable basis for such failure." ***Id.*** [(citation omitted).] Accordingly, [counsel] had a reasonable basis for this strategy and was not ineffective.

PCRA Court Opinion, 9/18/25, at 21-22 (unnecessary capitalization omitted). Therefore, we find no error in the PCRA court's rejection of Sinclair's second issue.

In his third issue, Sinclair avers that counsel was ineffective for failing to object to the Commonwealth's improper cross-examination of his character witnesses concerning specific instances of Sinclair's alleged criminal conduct.

- 16 -

*See* Appellant's Brief, at 21. Pursuant to our Rules of Evidence, a defendant in a criminal case "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Pa.R.E. 404(a)(2)(A).

> On cross-examination [of a character witness], the Commonwealth may inquire into relevant specific instances of the person's conduct that are probative of the character trait in question. Pa.R.E. 405(a)(1). The Commonwealth may not, however, inquire into allegations of other criminal conduct by the defendant that did not result in conviction. Pa.R.E. 405(a)(2).

*Alceus*, 315 A.3d at 860.

At trial, Sinclair presented the testimony of four character witnesses, who testified to his reputation for being a peaceful and law-abiding citizen. The Commonwealth asked each character witness whether the alleged conduct for which Sinclair was on trial was consistent with their testimony that he had a reputation for being peaceful and law-abiding. Counsel did not launch an objection until the Commonwealth subjected Sinclair's final character witness to this line of questioning. At the PCRA hearing, counsel acknowledged that the Commonwealth's questions were impermissible and that he should have objected when they were posed to each character witness.

> The PCRA court addressed this ineffectiveness claim as follows:
>
> In this case, [counsel] acknowledged that not objecting to the improper questions from the Commonwealth was an error and that they should have been objected to. Notably, he objected to this improper line of questioning in regard to character witness Kendell Sinclair[,] which was sustained. However, despite this error, [the PCRA] court determined that [Sinclair] was not prejudiced. These witnesses were asked about what the jury had

- 17 -

already seen and heard. While objecting would have been proper and those objections would have been sustained, objections would have served to further emphasize to the jury what was better off just moved past. [The PCRA court] determined that this improper cross-examination did not have an adverse effect on the outcome of the trial.

PCRA Court Opinion, 9/18/25, at 23 (unnecessary capitalization omitted).

We discern no error in the PCRA court's determination that this ineffectiveness claim fails for lack of prejudice. Sinclair's argument addressing prejudice with respect to this ineffectiveness claim is limited to the following sentence:

> Because both trial counsel and the [PCRA] court acknowledge that trial counsel should have objected to the Commonwealth's improper cross-examination, it is respectfully suggested that trial counsel's failure to object caused his representation to be constitutionally ineffective and [Sinclair] was substantially prejudiced, to such an extent as to require a new trial.

Appellant's Brief, at 33 (unnecessary capitalization omitted). Sinclair has failed to establish that, but-for counsel's failure to object to the Commonwealth's improper cross-examination of his character witnesses, there is a reasonable probability that the outcome of his trial would have been different. **See Nealy**, 333 A.3d at 399. Thus, because Sinclair has not satisfied his burden of proving that he was prejudiced by counsel's inaction, his ineffectiveness claim fails. Accordingly, Sinclair's third issue does not warrant relief.

Based on the foregoing, Sinclair's ineffectiveness claims do not entitle him to his requested relief, and we discern no error by the PCRA court in denying his PCRA petition. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026